IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JEANNETTE MARINO,                           )
                                            )
        Plaintiff,                          )
                                            )
    v.                                      )        1:24-CV-457 (LMB/WBP)
                                            )
MARTIN J. O'MALLEY, Commissioner of         )
    Social Security,                        )
                                            )
        Defendant.                          )

<u>MEMORANDUM OPINION</u>

Before the Court are the parties' cross-motions for summary judgment in three civil

actions brought by <u>pro se</u> plaintiff Jeannette Marino ("plaintiff" or "Marino") against the

Commissioner of the Social Security Administration ("defendant").[1]  At issue are plaintiff's

appeals of defendant's three decisions finding that Marino, who was the representative payee for

EJ and a couple, AR and WR,[2] was at fault for misusing some of the Social Security

Administration ("SSA") benefits paid to these beneficiaries and therefore is required to

reimburse defendant $9,002.95 for the misuse of EJ's benefits, $3,299.25 for the misuse of AR's

benefits, and $1,799.25 for the misuse of WR's benefits.[3]  The motions have been fully briefed

and oral argument has been held.  At the hearing, the Court orally granted defendant's Motion

---

[1] Plaintiff filed three identical complaints each ostensibly appealing one of the three decisions, but failed to identify which appeal concerned which beneficiary.  The first appeal was docketed as 1:24-cv-457, and the other two as 1:24-cv-460 and 1:24-cv-461.  At defendant's request, the three actions have been consolidated into 1:24-cv-457.

[2] To protect the privacy of the beneficiaries, the Court will refer to them only by their initials.

[3] As explained later, the SSA characterizes misuse of benefits by a representative payee as an "overpayment."

for Summary Judgment and denied plaintiff's Motion for Summary Judgment. This Memorandum Opinion supplements the oral decision.

## I. BACKGROUND

Marino was appointed the representative payee for Social Security beneficiaries EJ, AR, and WR. When the beneficiaries had difficulty paying for their basic needs, the SSA investigated and determined that Marino had misused some of the beneficiaries' Social Security benefits by collecting unauthorized or excessive fees and reimbursing herself for a loan without authorization to do so. The SSA sent Marino three separate overpayment notices requiring her to repay the misused funds in the following amounts—$10,042.00 for EJ, $3,299.25 for AR, and $1,799.25 for WR. Marino challenged the overpayments, claiming that the fees she collected were proper and owing and that all funds were used for the beneficiaries' care and maintenance. In 2018, two Administrative Law Judges ("ALJs"), one in the EJ matter and one in the AR and WR matters, found that Marino had misused the beneficiaries' Social Security benefits in the amounts determined by the SSA. On appeal, the Appeals Council found that Marino had misused the beneficiaries' benefits, resulting in overpayments, but remanded all matters for further review of certain issues. In 2022, on remand, one ALJ heard all three matters and found, in three separate decisions, that Marino had misused the benefits, resulting in overpayments, and that she was not entitled to a waiver of repayment because she was "at fault" in causing the overpayments. The ALJ reduced the amount of overpayment in the EJ matter from $10,042.00 to $9,002.95, but found the same amount of overpayments in the AR and WR matters that the previous ALJ had—$3,299.25 for AR and $1,799.25 for WR. The Appeals Council denied Marino's request for review of the ALJ's decisions, and this action followed.

Plaintiff's Motion for Summary Judgment asks the Court to overturn the ALJ's decisions because the ALJ's factual findings that she misused the beneficiaries' Social Security benefits and was at fault for the resulting overpayments are not support by substantial evidence. Specifically, Marino claims that the ALJ failed to consider "substantial evidence" showing that the funds were spent "directly on goods and services for the Beneficiaries" and that the ALJ's decisions "are contrary to the general consideration of equity and good conscience." Defendant's Motion for Summary Judgment contends that the ALJ's decisions are supported by substantial evidence and should be affirmed. The parties do not dispute the facts—they disagree about the legal interpretation of them.

Marino was appointed EJ's representative payee by the SSA and received Social Security benefits on EJ's behalf from October 2009 through January 2012. On November 17, 2009, the New Hampshire Probate Court appointed Marino to be the legal guardian of EJ's person and estate and, effective January 1, 2011, she was authorized by that court to collect a flat monthly guardianship fee of $275.[4] During that time, EJ resided at Community Crossroads, a community-based care facility operated by LifeShare, which charged monthly room and board fees of $744 per month.[5] Although the State of New Hampshire paid for most services for persons living in such care facilities, the resident was responsible for paying room and board from their income directly to the residential care provider. [R. 1375-76].

---

[4] As guardian of EJ's estate, Marino was entitled to received guardianship fees on an hourly basis. In March 2011, the probate court modified Marino's guardianship to be over the person only and changed the guardianship fee to a flat monthly fee of $275. [R. 1369].

[5] The rate increased to $756 for the last month that Marino was EJ's representative payee. [R. 1027].

On January 27, 2012, the SSA notified Marino that it was replacing her as EJ's representative payee and instructed her to return all conserved funds that she had received on EJ's behalf. Marino sent documents to the SSA's Concord, New Hampshire field office showing how she had used all benefits received on EJ's behalf. On June 19, 2014, the SSA issued Marino a Misuse Special Determination in the amount of $10,042.00, finding that Marino had collected excessive guardianship fees from EJ's benefits, leaving EJ with insufficient funds to pay her monthly room and board fees. Financial statements, bank records, and correspondence showed that Marino paid herself guardianship fees in monthly amounts ranging from $600 to $2,217, but did not begin to pay for EJ's monthly room and board fees until September 2011, and then she made only partial payments. Marino also did not return any conserved funds when the SSA appointed a new representative payee for EJ.

Marino was AR's appointed representative payee and received Social Security benefits on her behalf from March 2010 through September 2015. Marino was appointed WR's legal guardian by the New Hampshire Probate Court from June 2010 to January 2011, while he was on a ventilator, and she became his SSA representative payee in January 2011. In December 2010, AR and WR entered into a Power of Attorney ("POA") agreement with Marino, which, several years later in May 2016, the New Hampshire Probate Court declared invalid because Marino notarized the agreement herself, in violation of New Hampshire law.[6] The POA did not authorize the payment of any service fees.

---

[6] The invalidated December 2010 POA was just one of many bases for a New Hampshire Circuit Court's disciplinary order permanently banning Marino from acting as a guardian in the State of New Hampshire. [R. 207-14].

In November 2015, AR and WR contacted the SSA Concord field office to report that they were unable to cash their weekly food check, which was issued to them by Marino, because there were insufficient funds in their account. The SSA conducted an investigation and determined that Marino had been collecting $75 monthly fees from each of their monthly SSA benefits from October 1, 2013 to September 1, 2015, and withdrew a total of $1,500 in three $500 payments from AR's SSA benefits in April 2011, October 2011, and February 2012, to repay a loan Marino claims she made to the couple. The SSA removed Marino as AR's and WR's representative payee on November 30, 2015, and on July 20, 2016, issued Advance Notices of Requests for Repayment of Misused Funds in the amounts of $3,299.25 for AR and $1,799.25 for WR. Marino had 10 days to respond and dispute the notices but failed to do so. On August 11, 2016, the SSA issued overpayment notices for misuse of AR's and WR's funds in the amounts listed above based on Marino's wrongful collection of the 24 monthly $75 fees[7] from AR's and WR's benefits and the $1,500 she withdrew from AR's benefits for loan repayments. On August 24, 2016, Marino requested a reconsideration of the SSA's misuse determinations, claiming that she did not collect any representative payee fees; rather, she collected monthly fees under the POA for "financial & support services in the management of the household, pension & other benefits." She also claimed that the $1,500 loan repayment was for car repairs[8] and was taken from WR's pension benefits and not AR's Social Security benefits.

---

[7] The final fee Marino collected was for $74.25, and not the full $75.

[8] Marino now claims the loan repayment was for a hot water heater. [Dkt. No. 24] at 20.

In May 2022, on remand from the Appeals Council, the ALJ rejected Marino's arguments and found that she had misused EJ's benefits, resulting in an overpayment of $9,002.95.[9]  This amount was based on evidence showing that Marino received $19,358.80 from the SSA for EJ's care from October 2009 through January 2012, and that she only spent $4,398.62 for EJ's residential care and $5,957.85 for other allowable fees and expenses, leaving $9,002.95 as the amount not properly used and therefore deemed an overpayment.  The ALJ found that Marino was at fault for the overpayment because she collected guardianship fees that, while legal, deprived EJ of funds necessary to pay for her personal needs—that is, her monthly room and board.

With respect to AR and WR, the ALJ found that Marino had misused their funds, which resulted in the same amount of overpayment found by the previous ALJ— $3,299.25 for AR and $1,799.25 for WR.  He also found that Marino was at fault for the entire overpayment and therefore not entitled to a waiver because she had collected $75 each month from each beneficiary as a POA fee and made the loan repayments to herself without receiving SSA's authority to do so.  The ALJ also found that there was no indication that the fees Marino paid herself came from non-SSA income sources or that Marino maintained an account dedicated for the beneficiaries, meaning that the overpayment was caused by Marino's misuse of SSA funds.  [R. 26].[10]

---

[9] Generally, an "overpayment" is the difference between the amount paid to the beneficiary and the amount of payment to which the beneficiary was actually entitled, 20 C.F.R. § 404.504; however, when a beneficiary's benefits are paid to a representative payee, see 20 C.F.R. § 404.2001, any misuse of the benefits by the representative payee will be treated as an overpayment to that representative payee.  20 C.F.R. § 404.2041(f).

[10] In all three matters, after plaintiff asked to submit more evidence, the ALJ kept the record open for two weeks, but she did not submit any additional evidence before the ALJ nor has she requested to do so in these civil actions.

## II. DISCUSSION

Under the Social Security Act, the Commissioner's final decision should be affirmed "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (quoting Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal quotations and citations omitted). In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty to resolve evidentiary conflicts, not the reviewing court, and the ALJ's decision must be sustained if supported by substantial evidence. Smith, 99 F.3d at 638.

A representative payee must use the beneficiary's funds for the beneficiary's current maintenance, including costs incurred in obtaining food, shelter, clothing, medical care, and personal comfort items. 20 C.F.R. § 404.2040(a)(1). "[M]isuse of benefits by a representative payee occurs in any case in which the representative payee receives payment . . . for the use and benefit of another person and converts such payment, or any part therefor, to a use other than for the use and benefit of such other person." 42 U.S.C. § 1383(a)(2)(A)(iv). A representative payee who misuses a beneficiary's benefits is responsible for repaying the misused funds so that the SSA can return the misused benefits to the beneficiary. 20 C.F.R. § 404.2041(a).

7

A representative payee is prohibited from using benefits to pay herself for acting as a representative payee. Social Security Act §§ 205(j)(4), 1631(a)(2)(D). Only approved-for-fee service organizations may charge a fee, the amount of which is regulated by the SSA. POMS 00602.110, 00506.001. Moreover, if a representative payee is a creditor of the beneficiary, she must obtain authorization from the SSA before reimbursing herself out of benefits. POMS 00602.030.

The ALJ found that Marino misused $9,002.95 in benefits she received as EJ's representative payee from October 2009 through January 2012, by paying herself guardianship fees that deprived EJ of funds necessary for her monthly room and board. Before the ALJ and during oral argument, Marino admitted that she did not pay for EJ's monthly room and board from October 2009 until July 2011. [Dkt. No. 24] at 11; Tr. 1026-1029. She defends this conduct by arguing that she was entitled, under New Hampshire law, to collect the guardianship fees before paying for EJ's residential care and, in any event, that she was neither aware of, nor responsible for, paying any amounts owed to LifeShare for EJs' room and board. The credibility of these arguments is undercut by her payment of $2,000 to LifeShare in July 2011. She claims that she did so, not because she was required to pay for EJ's room and board, but because of "Medicaid procedural rules necessary to maintain required resource levels for Medicaid and SSA benefits." [Dkt. No. 24] at 11. She claims that she then began sending all excess benefits to LifeShare. Id.

Substantial evidence supports the ALJ's conclusion that Marino misused EJ's benefits by paying herself guardianship fees that depleted EJ's funds to the point where EJ's personal needs were unmet. Although Marino was authorized by the New Hampshire Probate Court to collect guardianship fees, Social Security regulations provide that the payment of such fees can still

8

constitute a misuse of benefits if the beneficiary's funds would be "depleted by the guardianship costs to the point where there are unmet personal needs."  POMS 00602.040.

From the time EJ moved into Community Crossroads in October 2009 until September 2011, Marino did not make monthly payments for EJ's room and board, which came to $744 per month, although she was regularly taking monthly guardianship fees that ranged from $275 to over $900. [R. 1026-1029, 1180].  The $2,000 payment that Marino made to LifeShare in July 2011 was credited to three unpaid invoices for November 2009, December 2009, and January 2010. Id. at 1027.  Beginning in September 2011, Marino began sending only partial monthly payments to LifeShare (i.e., $419, $402.25, $399.79, $622.58, and $555.00) for EJ's room and board. Id.

Marino acknowledges that she was aware that EJ was not receiving sufficient benefits to cover both the guardian fees and her monthly room and board fees, but argues that it was not her responsibility to cover the funding gap. [Dkt. No. 24] at 15 ("The SSFO correctly points out that the Beneficiary did not receive sufficient income for payment of her room and board fees, which needed to be supplemented by Medicaid APTD cash benefits used to supplement shortages of other available benefits to pay for medical care, including guardianship fees.").  The SSA's Protective Investigation Summary, dated February 27, 2014, also supports a finding that Marino was aware that her guardianship fees "used up all of Ms. EJ's income," leaving insufficient funds for room and board fees:

> [Marino] reported that Ms. EJ's room and board has been an issue for a long time. She stated that there has been a lot of communication between herself, LifeShare, and Community Crossroads since the very beginning.  Ms. Marino reported that [EJ's] income is not enough to cover the room and board fees and that she was clear with LifeShare and Community Crossroads regarding this.  In the early days of this case, Ms. Marino was charging $100 an hour for guardianship fees.  There was a lot that happened in the beginning of the case and fees used up all of [EJ's] income. In 2011, the fee was changed to a flat $275 a month fee.  Ms. Marino reported that

> these fees were all approved by the court. Ms. Marino reported that after the initial
> accrual of guardianship fees was paid and the monthly charge changed, [EJ] started
> to have money left from her Social Security benefit after guardianship fees were
> paid and Ms. Marino started sending a check every month to LifeShare.

[R. 1141]. During the investigation, Marino tried to downplay her responsibility for the non-payment of EJ's room and board fees, stating "it [was] the responsibility of the [SSA] Region to obtain the benefits necessary to offset costs in excess of available income or at the very least, to have advised [me] as to how to obtain additional benefits." Id. There is no requirement that the SSA obtain such benefits. Therefore, as the record clearly shows, the ALJ's finding that EJ's benefits were depleted by Marino's collection of guardianship fees to the point where EJ's personal needs were not being met was based on substantial evidence and the current law.

The ALJ also found that Marino misused $3,299.25 and $1,799.25 in benefits she received as AR's and WR's representative payee, respectively, by collecting a $75 monthly fee from each of their SSA benefit payments from October 1, 2013 to September 1, 2015, and withdrawing a total of $1,500 ($500 in April 2011, October 2011, and February 2012) from AR's benefits. Marino argues that there was no misuse of funds because the $75 fees were not collected as representative payee fees but as her fees for "time intensive activities and out-of-pocket expenses" that were "related to [AR's and WR's] cognitive disabilities." [Dkt. No. 24] at 21, 26. Even though she initially argued that the fees were authorized by the POA, she argues in her summary judgment memoranda that the 2010 POA was "never used to conduct any financial or other transaction at any time." Id. at 22. Instead, she seems to rely on a 2011 POA that was signed by only WR that authorized her to act as his agent with regard to his TIAA-CREF pension. [Dkt. No. 24-1] at 3. Regardless of whether the fees were pursuant to a POA or some other agreement with AR or WR, the fact remains that Marino was required to obtain the SSA's authorization to reimburse herself from AR's and WR's benefits, which she did not do. On this

record, the ALJ correctly found that collection of the $75 monthly fees constituted a misuse of Social Security benefits that resulted in an overpayment to Marino.

As for the $1,500 loan, Marino argues that she did not need to obtain SSA's authorization to take the repayments from AR's benefits because she was not the creditor; rather, the money came out of a designated community account she established under her company, Capital Payee Services ("CPS"). However, Marino admitted at the hearing before the ALJ that, although she made a loan to AR and WR out of a CPS account, she repaid it using their Social Security benefits, without documenting the loan or notifying and getting approval from the SSA. As such, the ALJ correctly found that Marino's use of AR's benefits to repay the loan without the SSA's authorization constituted misuse, which resulted in an overpayment to Marino.

Marino also argues that there was no misuse of SSA benefits because the repayment came from WR's pension benefits and not AR's Social Security benefits. There is no evidence in the record to support this claim. In fact, the bank records show that the reimbursements came from AR and WR's joint account, which is the account into which their SSA benefits were deposited. Marino admitted it was their only account, [R. 152], and submitted no evidence to support her claim that the loan repayments came from WR's pension funds. Accordingly, the ALJ's misuse and overpayment determination is supported by substantial evidence.

The Social Security Act authorizes the SSA to promulgate rules about, and execute the collection of, overpayments. 42 U.S.C. § 404(a)(1). The regulations provide that a representative payee's misuse of funds is treated as an overpayment to the representative payee, 20 C.F.R. § 404.2041(f); however, the SSA may waive collection of the overpayment when the individual is found to be without fault for causing the overpayment, and "the recovery would defeat the purpose of Title II . . . or be against equity and good conscience." 20 C.F.R. §

11

404.506(a).  The person seeking waiver of recovery bears the burden of proving that she was without fault.  Anderson v. Sullivan, 914 F.2d 1121,1122 (9th Cir. 1990).

To determine whether an individual is without fault and eligible for waiver of recovery of an overpayment, the ALJ must conduct a fault analysis as prescribed by 20 C.F.R. § 404.507; Harzewski v. Chater, 977 F.Supp. 217, 223 (W.D.N.Y. 1997).  In determining whether an individual is at fault for an overpayment, the ALJ must consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations" that may have contributed to the person's ability to comprehend what was required of her as representative payee.  20 C.F.R. § 404.507; Califano v. Yamasaki, 442 U.S. 682, 697 (1979).

What constitutes fault depends on whether the facts show that "the incorrect payment to the individual . . . resulted from . . . acceptance of a payment which he either knew or could have been expected to know was incorrect."  20 C.F.R. § 404.507.  If an overpaid individual fails to establish that she is without fault, it is unnecessary for the ALJ to address whether recovery would defeat the purpose of Title II or be against equity and good conscience.  Yankun v. Barnhart, 473 F. Supp. 2d 147, 150 (D. Mass. 2006).

In all three matters, Marino claims that a waiver is warranted because all benefits were spent directly on goods and services for the beneficiaries and that their needs were not negatively impacted by the "reasonable," "justified," and "customary" fees she collected.  [Dkt. No. 24] at 28.  The evidence in the record refutes her claim.  EJ's room and board fees at her community-based care facility went unpaid for 18 months and AR and WR were unable to cash their weekly food check due to insufficient funds in their bank account.  She also argues that she did not understand that her actions were contrary to Social Security laws and regulations.  The ALJ

12

rejected Marino's claim that she only had the knowledge of a lay person, finding that she "has a master's degree and has been working in this field since 2000 and had been in private practice since 2006 or 2007. This means that [she] should have been able to understand her obligations as a representative payee." [R. 27]. The ALJ's determination that Marino was at fault and not entitled to a waiver in these matters is supported by substantial evidence.

For these reasons, and those explained in open court, plaintiff's Motion for Summary Judgment has been denied and defendant's Motion for Summary Judgment has been granted. As a result of these decisions, plaintiff is required to repay the SSA a total of $14,101.45. Because the amount of the overpayment was not included in the Order issued on January 17, 2025, a revised order will issue with this Memorandum Opinion and the time in which plaintiff may appeal this decision will begin to run as of the date of the revised order.

Entered this ___3nd___ day of February, 2025.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge